**UNITED STATES of America,**

v.

**Michael A. LIPSCOMB, Appellant.**

No. 81–1895.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 19, 1982.

Reargued En Banc Oct. 27, 1982.

Decided March 11, 1983.

As Amended March 15, 1983.

MacKinnon, Circuit Judge, concurred specially with an opinion.

Steven H. Goldblatt, Washington, D.C. (appointed by this Court), with whom Samuel Dash, Washington, D.C., was on the brief, for appellant.

Marc B. Tucker, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, and Robert B. Cornell, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Regina C. McGranery, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before ROBINSON, Chief Judge, and WRIGHT, TAMM, MacKINNON, WILKEY, WALD, MIKVA, EDWARDS, GINSBURG, BORK and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD, in which Chief Judge ROBINSON, and Circuit Judges WRIGHT, TAMM, WILKEY, MIKVA, EDWARDS, GINSBURG, BORK and SCALIA concur.

Opinion concurring specially filed by Circuit Judge MacKINNON.

WALD, Circuit Judge:

A jury convicted Michael Lipscomb of possession of heroin with intent to distribute, and he now appeals. Lipscomb did not testify in his own defense; had he done so, the government would have impeached his credibility with an eight-year-old robbery conviction under Rule 609(a)(1) of the Federal Rules of Evidence. Three other defense witnesses did testify and were impeached by prior felony convictions. In ruling that these prior convictions satisfied Rule 609(a)(1)'s requirement that "the probative value of admitting this evidence outweighs its prejudicial effect to the defendant," the district court had before it only the names of the crimes, their dates, and, for the defendant Lipscomb, his age when the robbery was committed.

Lipscomb contends that without some information on the facts and circumstances underlying a prior conviction, the district court cannot determine whether the conviction is probative of a witness' credibility at all or, if it is probative, whether the probative value of the conviction outweighs its prejudicial effect. The government contends that the district court not only does not need to inquire into the facts and circumstances of a prior conviction in order to balance probativeness against prejudice, but should not be permitted to do so. We hold that (1) all convictions that meet the Rule 609(a)(1) threshold are at least somewhat probative of credibility; (2) the trial court has discretion to decide how much background information, if any, it needs to perform Rule 609(a)(1)'s balance of probativeness against prejudice to the defendant; and (3) the district court did not abuse its discretion in this case. We therefore affirm the conviction.

## I. BACKGROUND

### A. *Facts*

Lipscomb was tried twice on a charge of possession of heroin with intent to distribute under 21 U.S.C. § 841(a)(1). The first trial ended in a hung jury; the second led to a conviction.[1] He was sentenced to two

---

1. Lipscomb was also tried and convicted for possession of heroin, D.C.Code § 33–402(a) (1973) (now codified at D.C.Code § 33–502(a) (1981)), but this count was later dismissed on the government's motion. *See* Judgment and

to six years imprisonment. At both trials, the prosecution and the defense offered radically different versions of the events leading to Lipscomb's arrest. Thus, the credibility of the defense witnesses was central to the case.

For the prosecution, Officer Thomas Gallogly testified that on the afternoon of March 6, 1981, while in plainclothes, he observed a blue Buick parked on the corner of Fourth and Ridge Streets, Northwest, District of Columbia, an area known for heavy narcotics traffic. The car was surrounded by several men. Gallogly saw one of the men approach the car and pass money through the window to the driver in return for a small white object, which Gallogly suspected was a bag of heroin. Two more apparent transactions followed, but Gallogly did not see the objects that were exchanged. Gallogly identified the driver as the defendant Lipscomb.[2]

Lipscomb then drove several blocks, parked again, stepped out of his car, and began talking to someone. Gallogly, who had followed in his own car, got out and approached Lipscomb. Lipscomb turned around, saw Officer Gallogly, and immediately removed an object from his mouth, dropped it on the ground, and stepped on it. At the same time, Officer Gallogly smelled burning marijuana. He identified himself as a police officer and asked Lipscomb for his driver's license, to which Lipscomb replied that he had no license. Gallogly then retrieved the object that Lipscomb had dropped, concluded that it was probably a marijuana cigarette, and arrested Lipscomb for driving without a license and for possession of marijuana.[3]

Officer Gallogly searched Lipscomb and found 25 white plastic packets, later determined to contain heroin, and $320 in cash. He also found seven packets of heroin on the floor of the Buick.[4] Officer Gallogly's partner, Officer Mark Barrows, was not in a position to see the earlier heroin transactions, but confirmed that Gallogly had found heroin in Lipscomb's pockets.[5]

Lipscomb testified on his own behalf at the first trial but did not testify at the second trial. He stated that he spent most of the afternoon in question at home with his mother and his girlfriend, Rovetta Williams. He had loaned his car to a friend, Daryl Smith, who came by to drop off the car. Lipscomb then drove the car to Smith's mother's house to drop off Smith, dropped off Williams at her house, and returned to Smith's mother's house to pick up Smith and take him home. As Lipscomb got out of the car, Officers Gallogly and Barrows approached and asked for his driver's license. After Lipscomb stated that he had no license, the officers searched him and found cash but no heroin. They also found no heroin inside the car, but did remove a brown paper bag from the trunk; Lipscomb knew nothing about the bag. The cash was for a trip to New York he planned to take with his girlfriend Williams.[6] Lipscomb's story was corroborated by his mother, by his girlfriend, by his friend Smith, and by two other friends, Robert Green and Floyd Little, who claimed to be eyewitnesses to the arrest.[7]

The government impeached Lipscomb's credibility at the first trial with an eight-year-old robbery conviction and would have impeached his credibility at the second trial if he had testified.[8] The government also

Commitment Order (July 31, 1981), Record item 29.

2. Transcript of Second Trial, June 18–22, 1981 ("Tr. II"), at 26–33. We will generally cite to the transcript of the second trial (Tr. II) because only that trial is appealed from here.

3. *Id.* at 33–39.

4. *Id.* at 39–46.

5. *Id.* at 234–44.

6. Transcript of First Trial, May 27–29, 1981 ("Tr. I"), at 112–17.

7. Tr. II, *supra* note 2, at 126–29 (Mary Lipscomb), 133–37 (Rovetta Williams), 166–69 (Daryl Smith), 195–201 (Floyd Little), 220–24 (Robert Green).

8. Tr. I, *supra* note 6, at 128–29 (first trial); Tr. II, *supra* note 2, at 279 (statement of Judge Oberdorfer) (second trial).

impeached Smith's credibility with a 1980 armed robbery conviction, Green's credibility with a 1976 conviction for accessory after the fact to manslaughter, and Little's credibility with a 1976 robbery conviction.[9] The district court gave appropriate limiting instructions, and Lipscomb's attorney properly requested exclusion of the prior convictions, both before trial and in a post-trial motion for a new trial.

### B. The District Court's Decision to Admit the Prior Convictions

#### 1. Lipscomb

■ The district court admitted Lipscomb's eight-year-old robbery conviction into evidence under Rule 609(a)(1) of the Federal Rules of Evidence. Rule 609(a) states:

> GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted . . . but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Rule 609(b) creates an exception to Rule 609(a) for a prior conviction which is remote in time:

> TIME LIMIT. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines . . . that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

In ruling that the probativeness of Lipscomb's conviction outweighed its prejudicial effect, the court knew only the name of the offense (robbery), the date of conviction (1973), and Lipscomb's age when the crime was committed (16).[10] The court did not know the details of the crime, whether Lipscomb had pled guilty or not guilty, or the sentence imposed; it had inquired but the prosecutor stated that he had no more information.[11] The court found that Lipscomb's prior robbery conviction was probative because anyone "desperate enough to rob somebody . . . is desperate enough to lie on the witness stand,"[12] and because "the Defendant's testimony will be so important to his defense."[13] The court did not discuss the extent of prejudice, but did state for the record that "the probative value of admitting this evidence outweighs the prejudicial effect."[14]

In making this ruling based on limited information, the district court recognized the tension in our cases between, on the one hand, *United States v. Crawford*, 613 F.2d 1045, 1050–54 (D.C.Cir.1979) (Wald, J.), and, on the other hand, *United States v. Jackson*,

---

**9.** Tr. II, *supra* note 2, at 186–87 (Smith), 219 (Little), 230 (Green).

**10.** Lipscomb was tried as an adult; thus the special conditions in Rule 609(d) for admission of "juvenile adjudications" are not relevant. *See United States v. Ashley*, 569 F.2d 975, 978 (5th Cir.), *cert. denied*, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978); *United States v. Canniff*, 521 F.2d 565, 569 n. 2 (2d Cir.1975) (dictum), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976); *cf. United States v. Edmonds*, 524 F.2d 62 (D.C.Cir.1975) (same rule under D.C.Code § 14–305); *Luck v. United States*, 348 F.2d 763, 767 (D.C.Cir.1965) (same rule prior to enactment of Rule 609). *See generally United States v. Bland*, 472 F.2d 1329 (D.C.Cir.1972) (no constitutional bar to trying persons under 18 as adults for certain serious crimes), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973). *But see United States v. Harvey*, 588 F.2d 1201, 1203 (8th Cir.1978) (court excludes prior conviction for crime committed while a juvenile without discussing whether the defendant was tried as an adult).

**11.** Excerpts of Proceedings, May 27, 1981 ("Tr. III"), at 17.

**12.** *Id.* at 6.

**13.** Supplemental Excerpts of Proceedings, May 27, 1981, at 7.

**14.** Tr. II, *supra* note 2, at 280. .

627 F.2d 1198, 1208–10 (D.C.Cir.1980) (MacKinnon, J.), and *United States v. Lewis,* 626 F.2d 940, 945–51 (D.C.Cir.1980) (MacKinnon, J.). *Crawford* suggested that inquiry into the facts and circumstances underlying a prior conviction was desirable and often necessary; *Jackson* and *Lewis* suggested that such inquiry was rarely necessary. The district court concluded that "[t]here are two panels on the Court of Appeals and each has a different theory of this, and the most recent panel ... supports the Government's position [that detailed inquiry is unnecessary] ... and I will let it in."[15]

### 2. *Smith, Green, and Little*

The district court admitted Smith's armed robbery conviction because, as for Lipscomb's conviction, "the desperate person who would commit an armed robbery would also lie under oath."[16] The court did not expressly explain why Little's robbery conviction or Green's accessory after the fact to manslaughter conviction were probative of credibility. The court did, however, state its opinion as to both Little and Green that the "probative value of the convictions outweighs the prejudice to the Defendant."[17]

### 3. *The Motion for a New Trial*

■ The district court was unsure whether it had adequately supported its decision to admit the prior convictions, and therefore suggested that if Lipscomb were convicted, defense counsel ought to "give me an opportunity to review this further on a motion

---

**15.** Tr. II, *supra* note 2, at 164 (discussing Smith's robbery conviction); *see* Tr. III, *supra* note 11, at 11–17 (discussing Lipscomb's robbery conviction).

**16.** Tr. II, *supra* note 2, at 156.

**17.** *Id.* at 279. It is possible that the trial court explained at the first trial why the probativeness of Green's prior conviction outweighed prejudice to the defendant. Unfortunately, the relevant discussion between the court and counsel was not transcribed. *See* Tr. I, *supra* note 6, at 102.

**18.** Tr. II, *supra* note 2, at 284.

for new trial."[18] Counsel did so, and the government, at the court's insistence, had by that time produced supplemental background material on the prior convictions of Lipscomb, Smith, Green, and Little. The new information showed that Lipscomb: (1) in February 1973, with two others, had robbed a man on the street, threatening him with a B–B gun, and taking $13, his hat, and his coat; (2) in May 1973, pled guilty while maintaining his innocence pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and was sentenced to three years probation; (3) then spent four months in a halfway house, but was evicted for "disruptive behavior," including smuggling in a gun, and shortly thereafter was arrested for burglary; the burglary charges were dismissed on the government's motion, but Judge Penn revoked Lipscomb's probation and sentenced him to an indeterminate six-year sentence; (4) in 1976, failed to return from an unescorted furlough and was placed on escape status, but soon turned himself in; (5) while at a community care center in the District of Columbia, was arrested and convicted for several burglaries in Virginia and reincarcerated; (6) was finally released when his robbery sentence expired in November 1979.[19]

Smith had robbed a man at gunpoint and also stolen his car; he was convicted after pleading not guilty. Little and his younger brother had robbed a man at gunpoint, with Little stating "I've got a gun, punk, give me your money"; he was convicted after pleading not guilty. Green had been part

---

**19.** *See* Memorandum to the Court, Record item 27, at 4–5; Government's Memorandum in Aid of Sentencing, Record item 26, ¶ 1. It also appears that Lipscomb was wanted by Virginia for petit larceny and by Maryland for armed robbery. Government's Memorandum in Aid of Sentencing, *supra,* ¶ 1. In light of Congress' determination in Rule 609 that only prior *convictions* can be used to impeach a witness' credibility, and of the presumption in our criminal law that a defendant is innocent until proven guilty, the existence of pending charges does not increase the probative value of Lipscomb's prior conviction.

of a group who had robbed an 18-year-old boy; another member of the group had stabbed and killed the boy and the group then fled to Green's home. The principal in the stabbing was convicted of first-degree murder. In pleading guilty to accessory after the fact to manslaughter, he "expressed no regret" and explained his plea by stating "all of my witnesses stood up for the government."[20]

The district court concluded from all this that "there are even stronger reasons than I knew at the time for admitting the convictions," and denied the motion for a new trial.[21]

### 4. The Government's Reluctance to Provide Further Information on the Convictions

Under Rule 609(a)(1), the prosecution must show that the probative value of a prior conviction outweighs the prejudice to the defendant. If it cannot do so, the evidence is excluded. *See* 120 Cong.Rec. 40,891 (1974) (statement of Rep. Hungate, House floor manager for the Rules of Evidence) (the Conference Committee placed "the burden on the proponent of such evidence to show that . . . the probative value of the conviction outweighs its prejudicial effect"); *United States v. Smith,* 551 F.2d 348, 359–60 (D.C.Cir.1976).[22] A major subtheme in this case is the prosecution's attempt to minimize its burden of persuasion by insisting that the district court should not look behind the name and date of a conviction to determine how much probative value it has.

The government did not introduce any background information on the prior convictions at the first trial, stating that it had none. Moreover, during the three-week interval between the first and second trials, it made no effort to obtain any background information despite Judge Oberdorfer's request for it at the first trial. At the second trial, Judge Oberdorfer again asked for more information and the government resisted, claiming that the information was "unnecessary":

> THE COURT: Have you tried [to get the case jackets in the prior convictions]?
>
> MR. CORNELL: No, I have not.
>
> THE COURT: Well, see if you can.
>
> MR. CORNELL: One of the reasons is we don't view it as necessary. . . .
>
> THE COURT: . . . [T]he Court of Appeals will probably have these, and I don't see any reason why I should have to—
>
> MR. CORNELL: The Court of Appeals will not have the jackets.
>
> THE COURT: Well, they will if [defense counsel] puts them into the record in support of his motion for new trial. See if you can get them; not necessarily today . . . .
>
> MR. CORNELL: I will endeavor to get them.[23]

### C. Issues Presented

Lipscomb, relying on *Crawford,* contends that without knowing the circumstances of a prior conviction, the district court cannot, in all but exceptional cases, determine if the conviction is probative of credibility at all or how probative it is. Therefore, the prosecution, which has the burden of establishing admissibility, must submit such evidence. Without it, admitting the conviction is an abuse of discretion.[24] Lipscomb also

---

**20.** *See* Memorandum to the Court, *supra* note 19, at 2–3 (Little), 7–10 (Smith), 11–13 (Green).

**21.** Tr. II, *supra* note 2, at 318 (July 30, 1981).

**22.** *Accord United States v. Rivers,* 693 F.2d 52, 54 n. 3 (8th Cir.1982); *United States v. Gross,* 603 F.2d 757, 758 (9th Cir.1979) (per curiam); *United States v. Hayes,* 553 F.2d 824, 828 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977); *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976).

*But see United States v. Vanderbosch,* 610 F.2d 95, 98 (2d Cir.1979) (burden on defendant; contrary legislative history not discussed) (citing inapposite cases).

**23.** Tr. II, *supra* note 2, at 285–86.

**24.** Appellant's Brief at .12–17; Supplemental Brief for Appellant at 1–20 & n. 13. Lipscomb submits, as an example of an "exceptional" case where further inquiry would be unnecessary, "a series of recent, unrelated, prior con-

argues that the district court should not have considered the post-trial evidence and that this evidence does not in any event justify admitting the convictions.[25]

The government, relying on *Jackson* and *Lewis,* argues that under Rule 609(a)(1), all felony convictions less than ten years old are *per se* probative on the issue of credibility. It further contends that inquiry into the underlying facts would be burdensome, time-consuming, and generally unhelpful, and therefore should not be permitted.[26] Finally, the government argues that even if the district court must inquire into the underlying facts, the court did so after the trial and found ample basis for admitting the convictions.[27]

This court heard oral argument and then *sua sponte* set the case for reargument en banc to reconcile the tension between *Crawford, Jackson,* and *Lewis.*

Part II of this opinion concludes, based on the language and legislative history of Rule 609, that all felony convictions less than ten years old have at least some probative value on the issue of credibility. Part III concludes that the district court has discretion to determine when to inquire into background facts and when not to. We neither require the court generally to conduct such an inquiry nor discourage it from doing so. Finally, in part IV, we consider the facts of this case and find no abuse of discretion.

## II. THE PROBATIVENESS OF FELONY CONVICTIONS

In deciding whether the district court must inquire into the facts and circumstances underlying a conviction, a threshold question is whether, under Rule 609(a)(1), all felony convictions less than 10

years old have some probative value on the issue of credibility. The question is one of congressional intent, and we therefore look to the language and legislative history of the Rule for guidance.

We preface our analysis by considering what difference the answer makes. If a prior conviction for some crimes may not be probative of credibility at all, then for those crimes, the district court must inquire into the background facts and circumstances to determine whether a particular conviction has probative value. If, on the other hand, all felony convictions less than ten years old have some probative value on the issue of credibility, then in cases where there is minimal prejudice to the defendant (*e.g.,* impeachment of a witness who has no connection to the defendant), a prior conviction will almost always be admitted, and there is no need for a detailed inquiry into probativeness. Where the prior felony conviction would be prejudicial to the defendant to some degree, however, a threshold conclusion that the conviction is also probative to some degree does not help the district court determine whether, in a particular case, probativeness outweighs prejudice. Nor does it resolve the question of when the court should inquire into the background facts to determine how much probative value a prior conviction has.

### A. *Plain Meaning*

Rule 609, on its face, strongly implies that a prior conviction is *per se* probative of credibility for certain kinds of crimes. The language of the Rule also weakly suggests that all felony convictions less than 10 years old have at least some probative value.

victions for major felonies." Supplemental Brief for Appellant at 19.

**25.** Appellant's Brief at 21–26.

**26.** Brief for Appellee at 12–15; Supplemental Brief for Appellee at 2–21, 29–32. We will hereafter use the phrase "felony convictions less than 10 years old" as shorthand for Rule 609(a)(1)'s requirement that the crime be "punishable by death or imprisonment in excess of one year under the law under which he was

convicted" plus Rule 609(b)'s exception to Rule 609(a) for crimes where "a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." *See* 18 U.S.C. § 1(1) ("Any offense punishable by death or imprisonment for a term exceeding one year is a felony.").

**27.** Supplemental Brief for Appellee at 33–34.

Under Rule 609(a)(2), a prior conviction "shall be admitted" without any balancing of probativeness against prejudice, and regardless of the punishment, if the crime involved "dishonesty or false statement."[28] Drawing the line between crimes that involve "dishonesty or false statement" and crimes that do not is not easy, as numerous cases in this[29] and other circuits[30] attest. It is implausible that Congress believed that crimes falling on one side of the line are so probative of credibility that they should be admitted regardless of prejudice but that crimes falling just on the other side of the line may in some cases not be probative at all. More likely, Congress anticipated that crimes of stealth (*e.g.,* smuggling, burglary), while not quite crimes of "dishonesty or false statement," do reflect lack of credibility and should be admitted unless significantly prejudicial. Indeed, this court, in construing Rule 609(a)(2), has implicitly recognized as much by distinguishing between

crimes "that bear *directly* upon the accused's propensity to testify truthfully"[31] and offenses which, while they have "some bearing on an individual's credibility,"[32] should not be automatically admitted into evidence.

The harder question, on which our prior cases point in different directions, is whether Rule 609(a)(1) incorporates a congressional belief that *all* felony convictions less than 10 years old are somewhat probative of credibility, even crimes of impulse (*e.g.,* assault, purse-snatching, perhaps shoplifting). In *Crawford,* the district court ruled that a prior shoplifting conviction was admissible based only on the name and date of the crime. We found this information insufficient; without a factual inquiry, "the district court simply could not determine how probative (if at all) Crawford's shoplifting conviction may have been on her propensity to tell the truth." 613 F.2d at 1052.[33] In

**28.** We intimate no view on the question, expressly left open in *United States v. Smith,* 551 F.2d 348, 358 n. 20 (D.C.Cir.1976), not decided since, and not presented here, whether the automatic admissibility of a prior conviction for a crime of "dishonesty or false statement" under Rule 609(a)(2) is subject to the district court's general discretion under Rule 403 to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."

The current weight of authority is that Rule 609(a)(2) crimes cannot be excluded under Rule 403. *See United States v. Kiendra,* 663 F.2d 349, 353–55 (1st Cir.1981); *United States v. Leyva,* 659 F.2d 118, 121–22 (9th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982); *United States v. Toney,* 615 F.2d 277 (5th Cir.), *cert. denied,* 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1980); *cf. United States v. Coats,* 652 F.2d 1002, 1003 & n. 2 (D.C.Cir.1981) (Rule 609(a)(2) "foreclose[s]" consideration of possible prejudice to the defendant, Rule 403 not expressly discussed). *But see* 120 Cong.Rec. 2381 (1974) (statement of Rep. Lott) ("where there is an unusual danger . . . [of] unfair [ ] prejudice . . ., a remedy is provided by the general provision of rule [403]"); Comment, *The Interaction of Rules 609(a)(2) and 403 of the Federal Rules of Evidence: Can Evidence of a Prior Conviction Which Falls Within the Ambit of Rule 609(a)(2) Be Excluded by Rule 403?,* 50 U.Cin.L.Rev. 380 (1981).

**29.** *See United States v. Lewis,* 626 F.2d 940, 946 (D.C.Cir.1980) (selling heroin is not a crime of

dishonesty or false statement); *United States v. Fearwell,* 595 F.2d 771, 775–77 (D.C.Cir. 1978) (same conclusion for petit larceny); *United States v. Dorsey,* 591 F.2d 922, 935–36 (D.C. Cir.1978) (same for shoplifting); *United States v. Smith,* 551 F.2d 348, 362–65 (D.C.Cir.1976) (same for robbery); *United States v. Millings,* 535 F.2d 121, 122–24 (D.C.Cir.1976) (same for possession of heroin and carrying an unlicensed pistol).

**30.** *See, e.g., United States v. Mehrmanesh,* 689 F.2d 822, 833 (9th Cir.1982) (smuggling is not a § 609(a)(2) crime); *United States v. Elk,* 682 F.2d 168, 170 n. 3 (8th Cir.1982) (same for petty larceny); *United States v. Grandmont,* 680 F.2d 867, 871 (1st Cir.1982) (same for robbery); *United States v. Jackson,* 680 F.2d 561, 564 (8th Cir.1982) (transporting forged securities in interstate commerce is a § 609(a)(2) crime); *United States v. Gellman,* 677 F.2d 65, 66 (11th Cir.1982) (same for failure to file federal tax return).

**31.** *United States v. Fearwell,* 595 F.2d 771, 777 (D.C.Cir.1978) (emphasis in original).

**32.** *United States v. Smith,* 551 F.2d 348, 365 (D.C.Cir.1976); *accord United States v. Grandmont,* 680 F.2d 867, 871 & n. 3 (1st Cir.1982); *United States v. Glenn,* 667 F.2d 1269, 1273 (9th Cir.1982).

**33.** In an earlier opinion construing § 609(a)(2), we similarly stated that the crime of petit larce-

*Jackson,* however, we affirmed the district court's decision to admit a prior manslaughter conviction without suggesting that an inquiry into the background facts and circumstances of the crime was necessary. We recognized that manslaughter is "not particularly a veracity-related crime," but relied on the "congressional determination that such a crime, as a felony, may be admissible under Rule 609(a)(1)." 627 F.2d at 1210.[34] Similarly, in *Lewis,* 626 F.2d at 949 n. 12, we found that the name and date of a prior narcotics conviction was sufficient basis for the district court's ruling that probativeness outweighed prejudice in a trial on a new narcotics charge.[35]

The language of Rule 609(a)(1) gives two small clues. Under the Rule, felony convictions less than 10 years old

> *shall be admitted* if [properly introduced] during cross-examination *but only if* the

crime (1) was [a felony] and the court determines that *the probative value* of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(Emphasis added.) The phrasing "shall be admitted ... but only if," plus the phrase "*the* probative value," suggests that all prior convictions meet a threshold relevance requirement, but must nevertheless be evaluated for their prejudicial effect to the defendant. This linguistic inference would accord with the pre-Rule 609 understanding that all felony convictions were somewhat probative of credibility.[36] It would also be consistent with Congress' understanding that "the prior felony conviction of a prosecution witness may always be used [because] [t]here can be no prejudicial effect to the defendant." [37]

---

**34.** In *Jackson,* the district court was in fact aware of the underlying circumstances because defense counsel brought them to the court's attention, but those facts tended to rebut any belief that the prior conviction was probative of credibility. Jackson had shot and killed his wife and "had also shot the man who was with his wife at the time." 627 F.2d at 1210 n. 28.

**35.** *Lewis* could be considered a special case because the defendant had testified that he was ignorant of street drug transactions. *See* 626 F.2d at 947. Thus, his prior conviction served not only to impeach his credibility in general but also to rebut specific testimony. However, while our opinion discussed this additional reason for admitting his prior narcotics conviction, *see id.* at 950–51, our analysis did not treat this reason as critical, *see id.* at 948–50.

ny, "like multifarious others of a similar nature, simply has no bearing whatever on the 'accused's propensity to testify truthfully.' " *United States v. Fearwell,* 595 F.2d 771, 776 (D.C.Cir.1978) (Wright, J.) (quoting H.R.Rep. No. 1597 (Conf.Rep.), 93d Cong., 2d Sess. 9 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7098, 7103). *See also United States v. Beahm,* 664 F.2d 414, 419 (4th Cir.1981) (prior conviction for "unnatural and perverted sexual practices" has "minimal if any bearing" on credibility); *United States v. Ortiz,* 553 F.2d 782, 786 (2d Cir.) (Mansfield, J., dissenting) (district court must inquire into underlying facts "to determine whether [defendant's prior narcotics conviction] had probative value"), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977).

**36.** We pioneered the dominant approach in *Luck v. United States,* 348 F.2d 763, 768 (D.C. Cir.1965) (trial judge may exclude prior felony conviction where "the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction") and *Gordon v. United States,* 383 F.2d 936, 939 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968) (burden of persuasion is on the defendant to show why prior conviction should be excluded). *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 609[03] (1981) (surveying pre-Rule 609 case law). The *Luck-Gordon* approach assumes that a prior conviction is probative of credibility; it will be excluded only if the defendant shows unusual prejudice.

In so concluding, we recognize the statement in *Gordon,* 383 F.2d at 940, that "[a]cts of violence ... generally have little or no direct bearing on honesty and veracity." But to say that violent crimes have no "direct bearing" on veracity is not to say that they have *no* bearing. Moreover, any statement that felonies involving violence have no bearing on veracity at all would be inconsistent with admitting convictions for these felonies unless the prejudicial effect "far outweighs" the probative value.

**37.** 120 Cong.Rec. 40,891 (1974) (statement of Rep. Hungate, House floor manager for the Rules of Evidence, explaining conference committee version of Rule 609(a)); *see, e.g., United States v. Martin,* 562 F.2d 673, 680 n. 16 (D.C. Cir.1977); *Government of the Virgin Islands v. Carino,* 631 F.2d 226, 228 (3d Cir.1980); *United States v. Ortega,* 561 F.2d 803, 806 (9th Cir. 1977). *But cf. United States v. Petsas,* 592 F.2d

The inference is hardly compelling, however. Had Congress used the phrasing "shall be admitted ... only if," one could not infer that all prior convictions are relevant. The use of "but" in "shall be admitted ... but only if" does not, as a matter of strict logic, alter the meaning of the phrase, but does create a slight pause after "shall be admitted." One must assume that this pause has substantive content for any inference of admissibility to arise. Similarly, one must read the phrase "the probative value" as implying conscious rejection of the alternate phrasing "the probative value, if any." For further guidance, we turn to the legislative history.

### B. *Legislative History*

The legislative history of Rule 609, although not conclusive, supports the view that all felony convictions are probative of credibility to some degree.[38] It begins with *Luck v. United States,* 348 F.2d 763, 768 (D.C.Cir.1965), where we interpreted a D.C. Code provision that prior convictions "*may* be given in evidence" (emphasis added) to permit the trial judge to exclude a prior conviction where "the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility." This approach became the dominant one under federal common law as well.[39] In 1970, however, Congress expressly rejected *Luck* for the District of Columbia, amending the D.C. Code to provide that evidence of a prior conviction, if less than 10 years old,

> *shall* be admitted ... but only if the criminal offense (A) was [a felony] or (B) involved dishonesty or false statement (regardless of punishment).[40]

The new rule gave the trial judge no discretion either to exclude felony convictions less than 10 years old or to admit convictions more than 10 years old.

The Advisory Committee on the Federal Rules of Evidence, in an early draft of the Rules, essentially adopted the *Luck* discretionary approach:

> [A prior conviction] is admissible but only if the crime (1) was [a felony] or (2) involved dishonesty or false statement regardless of the punishment, unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.[41]

In this version, the phrasing "is admissible ... unless" and "the probative value" strongly suggests that all felonies have some probative value. The Advisory Committee finally decided to make all felonies and crimes of dishonesty or false statement automatically admissible "to accord with the Congressional policy manifested in the 1970 legislation [rejecting *Luck* for the District of Columbia]."[42]

The House subcommittee that considered the proposed Rules of Evidence decided,

525, 528 (9th Cir.) (at defense request, court instructed government not to impeach its own witness, who was apparently a co-conspirator of the defendant), *cert. denied,* 442 U.S. 910, 99 S.Ct. 2824, 61 L.Ed.2d 276 (1979).

**38.** For general reviews of the history of Rule 609, see 3 J. Weinstein & M. Berger, *supra* note 36, ¶¶ 609–609[01]; Tobias, *Impeachment of the Accused by Prior Conviction and the Proposed Federal Rules: The Tortured Path of Rule 609,* in *Rules of Evidence (Supplement): Hearings Before the Subcomm. on Criminal Justice of the House Comm. on the Judiciary,* 93d Cong., 1st Sess. 105 (1973); Comment, *Prior Conviction Evidence and Defendant Witnesses,* 53 N.Y.U.L.Rev. 1290, 1295–1301 (1978).

**39.** *See* 3 J. Weinstein & M. Berger, *supra* note 36, ¶ 609[03], at 609–60 n. 2 (collecting cases).

**40.** District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, sec. 133(a), § 14–305(b)(1), 84 Stat. 473, 551 (codified at D.C.Code § 14–305(b)(1)) (emphasis added).

**41.** Proposed Fed.R.Evid. 609(a), 51 F.R.D. 315, 391 (rev. draft 1971). The Committee expressly noted that the rule "finds its genesis in [*Luck*]." *Id.* advisory committee note, 51 F.R.D. at 393. This proposal was a revision of the original draft, which had permitted impeachment by all prior convictions for felonies or crimes involving dishonesty or false statement. Proposed Fed.R.Evid. 6–09(a), 46 F.R.D. 161, 295–96 (prelim. draft 1969).

**42.** Fed.R.Evid. 609 advisory committee note, 56 F.R.D. 183, 270 (1973).

however, that judges should have discretion to exclude prior convictions not involving dishonesty or false statement. The subcommittee's version roughly paralleled the Advisory Committee's earlier draft:

[A prior conviction] is admissible only if the crime (1) was [a felony] unless the court determines that the danger of unfair prejudice outweighs the probative value of the evidence of the conviction, or (2) involved dishonesty or false statement.

H.R.Rep. No. 650, 93d Cong., 1st Sess. 11 (1973), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7075, 7084 ("H.R.Rep."). This version was in turn rejected by the House Judiciary Committee, which decided to permit impeachment "only if the prior crime involved dishonesty or false statement." *Id.*

The House adopted the Judiciary Committee version. The House debate does not suggest a consensus on whether all felonies have some probative value. Supporters of automatic admissibility argued, of course, that all felonies were probative of credibility because, *e.g.,* " 'they entail substantial injury to and disregard of the rights of other persons.' "[43] And Representative Smith, the chairman of the House subcommittee and the principal spokesman for the subcommittee version giving discretion to the trial judge, explained that the subcommittee had "no doubt that there is probative value in the evidence of previous felonies," but was concerned about prejudice to the defendant if all prior felonies were admitted into evidence.[44] However, Representative Dennis, the principal proponent of limiting impeachment to crimes of dishonesty or false statement, argued that many other felonies had "no connection to [the witness'] credibility at all."[45]

The Senate Judiciary Committee agreed with the House that the defendant himself should be impeached only by a prior conviction for a crime of dishonesty or false statement. However, it amended Rule 609(a) to permit impeachment of other witnesses by any felony if "the probative value of such evidence outweighs its prejudicial effect against the party offering that witness." S.Rep. No. 1277, 93d Cong., 2d Sess. 14 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7051, 7061 ("S.Rep."). The Committee also changed the House phrase "is admissible" to "may be elicited," although this change was not explained in the committee report. Thus, the Senate Judiciary Committee version read:

[A prior conviction] may be elicited from [a witness] . . . but only if the crime (1) involved dishonesty or false statement or (2) in the case of witnesses other than the accused, was [a felony], but only if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect.

H.R. 5463 (Senate Judiciary Committee version), § 609(a) (1974). On the Senate floor, this provision was again debated, and rejected by a narrow margin in favor of the automatic admission rule of the D.C.Code:

[A prior conviction] shall be admitted if elicited from [a witness] . . . but only if the crime (1) was [a felony] or (2) involved dishonesty or false statement, regardless of the punishment.

120 Cong.Rec. 37,076 (1974) (statement of Sen. McClellan).

The Senate debate suggests substantial support for the view that all felonies are probative of credibility to some degree. A minority believed that a prior conviction may sometimes have "no bearing" on credi-

---

**43.** 120 Cong.Rec. 1414 (1974) (statement of Rep. Hogan) (quoting Proposed Fed.R.Evid. 6–09(a) advisory committee note, 46 F.R.D. 161, 297 (prelim. draft 1969)); *see id.* at 2381 (statement of Rep. Lott) (prior felony convictions are evidence of character and "the character of a witness is material circumstantial evidence on the question of . . . veracity").

**44.** *Id.* at 2378 (statement of Rep. Smith).

**45.** *Id.* at 2377 (statement of Rep. Dennis). Other supporters of this position, however, may have been primarily concerned with prejudice to the defendant. *See id.* at 2379 (statement of Rep. Wiggins) ("There is serious doubt in my mind . . . that it is possible for a man to receive a fair trial if the jury knows he has committed, for example, the crime of child molesting.").

bility.[46] But as in the House, supporters of automatic admissibility (who were a majority of the Senate) necessarily believed that all felonies were probative.[47] In addition, Senator Hart explained that the Judiciary Committee had chosen to exclude prior felony convictions because of prejudice to the defendant, *not* because such crimes were irrelevant to the question of credibility:

> The Committee recognized that ... prior conviction[s] for ... serious crimes are not *totally irrelevant* as to whether the witness is telling the truth, since they do reflect his attitude toward the rules of the game.

*Id.* at 37,078 (prepared statement of Sen. Hart) (emphasis in original).[48]

The Conference Committee report suggests that the Committee accepted the Senate understanding that all prior felonies are probative of credibility to some degree. First, the Committee took the Senate version as its starting point; it "adopt[ed] the Senate amendment with an amendment." H.R.Rep. No. 1597, 93d Cong., 2d Sess. 9 (1974) *reprinted in* 1974 U.S.Code Cong. & Ad.News 7098, 7102 ("Conf.Rep."). Second, the Committee explained its rule not as permitting the trial judge to exclude prior felony convictions because they may not be probative, but rather as removing judicial discretion over prior convictions involving dishonesty or false statement because

"[s]uch convictions are *peculiarly* probative of credibility." *Id.,* 1974 U.S.Code Cong. & Ad.News at 7103 (emphasis added). Third, the Committee determined that only "the prejudicial effect *to the defendant"* was to be weighed against probative value. *Id.* (emphasis in original). For other witnesses "the danger of prejudice ... [was] outweighed by the need for the trier of fact to have *as much relevant evidence on the issue of credibility as possible."* *Id.* (emphasis added). Thus, the Committee must have assumed that prior felony convictions are indeed relevant evidence.[49]

This history is not wholly satisfying. Congress never focused on the narrow question whether all felonies have at least some probative value on the issue of credibility. Also, the Conference Committee, with a variety of earlier drafts to choose from, chose the ambiguous final text (prior convictions "shall be admitted ... but only if ... the probative value of admitting this evidence outweighs its prejudicial effect") over the clearer language of the House subcommittee and Advisory Committee drafts (a prior conviction "is admissible ... unless ... the danger of unfair prejudice outweighs the probative value") and the clearer negative language of Rule 609(b) (a conviction over 10 years old is "not admissible ... unless ...").

---

46. *Id.* at 37,079 (statement of Sen. Burdick) ("if a young man stole an automobile at an early age, though it was a felony, perhaps it has no bearing" on credibility); *cf. id.* at 37,080 (statement of Sen. Kennedy) ("a prior conviction for an unrelated crime that does not involve dishonesty or false statement is not likely to be probative of the defendant's guilt").

47. *See id.* at 37,076 (statement of Sen. McClellan) ("Can it really be argued that the fact that a person has committed a serious crime—a felony—has no bearing on whether he would be willing to lie to a jury?"); *id.* at 37,077 (statement of Sen. Hruska) ("A person who would commit a felony such as loansharking may have no greater hesitancy about lying under oath than an individual who had previously been convicted of a crime involving dishonesty."); *id.* at 37,080 (statement of Sen. Thurmond).

48. *But see id.* at 37,081 (statement of Sen. Hart) ("We say, with respect to witnesses other than the accused, prior convictions, yes; with respect to the accused, only convictions that, in truth and in fact, go to credibility.").

49. There was no discussion of the Conference Committee version of Rule 609 on the floor of the Senate. *See* 120 Cong.Rec. at 40,069–70. The brief House discussion sheds little light on the Rule. Two Conference Committee members did, however, state their understanding that under the Rule, "the prior felony conviction of a prosecution witness may always be used." *Id.* at 40,891 (statement of Rep. Hungate, House floor manager for the Rules of Evidence); *see id.* at 40,894 (statement of Rep. Dennis) ("[N]ow a defendant can cross examine a government witness about any of his previous felony convictions; he can always do it, because that will not prejudice him in any way.").

Moreover—and an important caveat—we have deliberately used the phrases "somewhat probative" or "probative to some degree" for no stronger statement could be made. Congress recognized, and it is obvious, that some prior convictions have little relationship to credibility while others are highly probative. For example, Rule 609(b) reflects Congress' belief that "convictions over ten years old generally do not have much probative value." S.Rep. at 15, 1974 U.S.Code Cong. & Ad.News at 7061.[50] This implies that many 9-year-old convictions are only slightly probative; probativeness does not suddenly vanish when the 10-year mark is reached. Similarly, the line between felonies and misdemeanors (which are admissible only if they involve dishonesty or false statement) will not always be sharp. A felony conviction could conceivably be based on conduct which would be a misdemeanor in another jurisdiction. Presumably, such a conviction would be only slightly probative of credibility.[51]

Nevertheless, on the available evidence, and subject to the caveat in the last paragraph, we must conclude that Congress believed that all felonies have some probative value on the issue of credibility. *Accord NLRB v. Jacob E. Decker & Sons,* 569 F.2d 357, 363 (5th Cir.1978) ("When Congress adopted [Rule 609(a) ] it determined that felonies . . . did bear on the credibility of witnesses.").

### III. INQUIRY INTO BACKGROUND FACTS AND CIRCUMSTANCES

Part II established that all felony convictions are probative of credibility to some degree. However, evidence that a witness is a convicted criminal can also seriously prejudice the defense, especially when the witness is the defendant himself.

The jury is told to consider the defendant's prior conviction only on the issue of credibility and not on the overall issue of guilt. But limiting instructions of this type require the jury to perform "a mental gymnastic which is beyond, not only their powers, but anybody's else." *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.) (L. Hand, J.), *cert. denied,* 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932). In the words of Justice Jackson: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States,* 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring) (citations omitted). The transcript in this case ironically confirms these observations. It includes the following interchange between the trial judge and the prosecutor:

THE COURT: Say again why [Lipscomb's prior robbery conviction] is probative of his guilt in this case.

MR. CORNELL: It is not probative. If it was probative of his guilt—

THE COURT: Probative of his credibility. Why is it probative of his credibility?[52]

■ When the defendant is impeached by a prior conviction, the question of prejudice, as Congress well knew, is not *if,* but how much.[53] Congress in Rule 609(a)(1) there-

---

**50.** *See also* H.R.Rep. at 12, 1974 U.S.Code Cong. & Ad.News at 7085 ("after ten years . . . the probative value of the conviction . . . [has] diminished to a point where it should no longer be admissible").

**51.** For statements recognizing that some felony convictions are only slightly probative of credibility, see 120 Cong.Rec. 37,079 (1974) (statement of Sen. McClellan, the principal Senate proponent of automatic admissibility) (recognizing the potential need for "some measure of limited discretion . . ., for example, in some cases involving juveniles"); *id.* (statement of Sen. Burdick) ("This is not all black and white. We just cannot say that we should use all prior

behavior or no prior behavior, as having a bearing on credibility.").

**52.** Tr. III, *supra* note 11, at 5.

**53.** *Compare, e.g.,* 120 Cong.Rec. 2378 (statement of Rep. Smith) ("there is no doubt that testimony of previous felonies could unduly prejudice the jurors"); *id.* at 2379 (statement of Rep. Wiggins) ("There is serious doubt in my mind . . . that it is possible for a man to receive a fair trial if the jury knows that he has committed, for example, the crime of child molesting."); *id.* at 37,078 (1974) (prepared statement of Sen. Hart) ("most of us would agree that the potential for prejudice against the *defendant,*

fore instructed the courts to admit evidence of a prior felony conviction "only if . . . the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant."

In this part, we consider how much information the trial judge needs to perform this balance. To meet its burden of justifying admission of the conviction, the government at a minimum must furnish the district court with the name of the crime (to show that it is a felony) and the date of the conviction (to show that the conviction is less than 10 years old). At issue here is when the district court can or must seek additional information, and how much. Lipscomb argues that the district court must usually inquire into the underlying facts and circumstances, while the government argues that the district court should not be permitted to do so.

■■■ We note preliminarily that the district court must carefully and thoughtfully consider the information before it to determine if probativeness outweighs prejudice to the defendant. This balancing must not become a ritual leading inexorably to admitting the prior conviction into evidence. Rather, the final version of Rule 609(a)(1) must be understood as a compromise between the House preference for excluding all prior convictions unless the crime involved "dishonesty or false statement" and the Senate preference for admitting all prior felony convictions. In particular, there can be no legal presumption of admissibility. To the contrary, as noted earlier, the burden is on the government to show that the probative value of a conviction outweighs its prejudicial effect to the defendant. *Accord United States v. Fountain,* 642 F.2d 1083, 1092 (7th Cir.), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981); *United States v. Cook,* 608 F.2d 1175, 1187 (9th Cir.1979) (en banc), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).[54]

There is less risk of prejudice when a defense witness other than the defendant is impeached through a prior conviction because the jury cannot directly infer the defendant's guilt from someone else's criminal record.[55] The jury may, however, still presume guilt or lack of credibility of the defendant by association or may unduly discount the defense witness' testimony. And Rule 609(a)(1) still requires the trial judge to balance probativeness against prejudice to the defendant before admitting the conviction.

himself, if he tries to testify in his own behalf, is overwhelming") (emphasis in original); *id.* at 37,080 (statement of Sen. Kennedy) ("all authorities agree that the greatest source of prejudice to a defendant is a prior felony conviction"); *with, e.g., id.* at 2381 (statement of Rep. Lott) ("where there is unusual danger . . . [of] unfair[ ] prejudice . . ., a remedy is provided by the general [exclusion] provision of rule [403]"); *id.* at 1415 (statement of Rep. Hogan) (recognizing "the shortcomings of the traditional [rule of automatic admissibility]" but seeing no better alternative); *id.* at 37,077 (statement of Sen. Hruska) ("to a substantial degree, this prejudice [to the defendant] can be instigated [*sic*] by [a limiting] instruction").

**54.** In *Lewis,* 626 F.2d at 950, we found no error even though the district court had stated that Rule 609(a)(1) created "a strong presumption of letting in prior convictions." But our opinion did not endorse such a presumption; rather, we emphasized that the district court's statement "must be read in its context." *Id.* We did state that "[Rule 609(a) ] stresses admissibility while [Rule 609(b) ] stresses inadmissibility." *Id.* (footnote omitted). The force

of that remark, however, is exhausted in our conclusion in part II that all felonies have some probative value on the issue of credibility. Once the balancing stage is reached, the nature of the compromise reached by the Conference Committee precludes any presumption that prior felony convictions should be admitted.

**55.** The Senate Judiciary Committee excluded all felony convictions of the defendant but permitted the judge to admit prior felony convictions of other witnesses after a balancing analysis. It explained: "[T]he danger of unfair prejudice is far greater when the accused, as opposed to other witnesses, testifies, because the jury may be prejudiced not merely on the question of credibility but also on the ultimate question of guilt or innocence." S.Rep. at 14, 1974 U.S.Code Cong. & Ad.News at 7061. *See also* Proposed Fed.R.Evid. 609 advisory committee note, 51 F.R.D. 315, 392 (rev. draft 1971) ("The risk of unfair prejudice in the use of this method to impeach the ordinary witness is so minimal as scarcely to be a subject of comment.").

## A. *Plain Meaning*

A comparison of Rule 609(a)(1) with Rule 609(b) strongly suggests that Rule 609(a)(1) does not require the district court always to inquire into the facts and circumstances underlying a prior felony conviction. Under Rule 609(b), a felony conviction more than 10 years old can be admitted only if "the probative value of the conviction *supported by specific facts and circumstances* substantially outweighs its prejudicial effect." (Emphasis added.) Rule 609(a)(1), in contrast, does not require that the probative value of the conviction be supported by specific facts and circumstances. We must presume that the omission was intentional.

On the other hand, Rule 609(a)(1) is broadly phrased to require balancing of probativeness against prejudice, with no specific instructions as to how the balance is to be performed. The language of the Rule gives no hint that Congress intended to preclude the district court from considering all relevant evidence. And Rule 609(b) shows Congress' belief that the "specific facts and circumstances" of the prior crime are relevant to the balancing inquiry.

In addition, Rule 609(b) controls admission of convictions for which more than 10 years have elapsed "since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." To determine if the defendant was released from confinement less than 10 years ago even though the conviction occurred more than 10 years ago, the trial judge must inquire into some of the background facts; in particular, the sentence imposed and the release date.

Moreover, Rule 609(a)(2) creates a *per se* rule that probativeness outweighs prejudice for crimes "involv[ing] dishonesty or false statement." Often, however, the trial judge will not be able to determine from the name of a crime whether the defendant's conduct involved dishonesty or false statement. All circuits that have considered the question, including our own, have held that the prosecution may adduce specific facts to bring a prior conviction within Rule 609(a)(2). *United States v. Smith,* 551 F.2d 348, 364 n. 28 (D.C.Cir. 1976).[56] It seems equally appropriate to permit the district court to elicit such facts in balancing probativeness against prejudice under Rule 609(a)(1).

We conclude from the language of Rule 609, then, that the district court can inquire into the background facts and circumstances, but need not always do so. Because the Rule does not indicate when the district court should seek this additional information, we further conclude that the district court has discretion to decide when it should do so.

## B. *Legislative History*

### 1. *Rule 609(a)*

Congress did not focus its attention on when the trial judge should inquire into the background facts and circumstances of a prior conviction. But the legislative history of Rule 609(a) suggests that Congress probably intended neither to require the trial

---

**56.** *See also United States v. Dorsey,* 591 F.2d 922, 935 (D.C.Cir.1978); *United States v. Mehrmanesh,* 689 F.2d 822, 833 & n. 13 (9th Cir.1982); *United States v. Elk,* 682 F.2d 168, 170 n. 3 (8th Cir.1982); *United States v. Grandmont,* 680 F.2d 867, 871 (1st Cir.1982); *United States v. Whitman,* 665 F.2d 313, 320 (10th Cir.1981); *United States v. Cathey,* 591 F.2d 268, 276 n. 16 (5th Cir.1979); *United States v. Papia,* 560 F.2d 827, 847 (7th Cir.1977); *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977); *Government of the Virgin Islands v. Toto,* 529 F.2d 278, 281 n. 3 (3d Cir.1976) (applying pre-Rule 609 common law but noting that the Rule accords with existing Third Circuit practice); *cf. United States v. Cunningham,* 638 F.2d 696, 699 (4th Cir.1981) (defense counsel failed to introduce facts to show that the prior misdemeanor conviction of a government witness involved dishonesty or false statement). *But see United States v. Lewis,* 626 F.2d 940, 946 (D.C.Cir.1980) (interpreting Rule 609(a)(2) to require that the crime involve dishonesty or false statement "as an *element* of the statutory offense") (emphasis in original) (dictum); 3 J. Weinstein & M. Berger, *supra* note 36, ¶ 609[04], at 609–75 ("The statutory definition should control ... [because] convenience requires a rather mechanical rule.") (footnote omitted).

judge to routinely inquire into the background facts and circumstances nor to preclude the judge from doing so.

Our review of that history begins, once again, with *Luck v. United States,* 348 F.2d 763 (D.C.Cir.1965). In *Luck,* we listed, as factors that "might be relevant" to the district court's decision to admit or exclude a prior conviction:

the nature of the prior crimes, the length of the criminal record, the age and circumstances of the defendant, and, above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction.

*Id.* at 769 (footnote omitted). But we also emphasized the "inescapable remoteness of appellate review" and the need for the trial judge to exercise discretion "in the light of the record as it develops before him." *Id.*

In *Gordon v. United States,* 383 F.2d 936 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), we again considered the relevant factors, this time listing whether the prior conviction "rest[s] on dishonest conduct," its "nearness or remoteness" in time, subsequent "legally blameless life," and whether the prior conviction was "for the same or substantially the same conduct for which the accused is on trial." *Id.* at 940. But we recognized that "many other factors ... may be relevant ... in a particular case." *Id.* (citing *Luck,* 348 F.2d at 769). Thus, our early decisions suggest that we thought it unwise to limit artificially the district court's exercise of discretion.[57]

The Advisory Committee on the Rules of Evidence, in an early draft, codified the *Luck-Gordon* rule [58] and reaffirmed the broad discretion granted to the district court. The Committee's explanation for the Rule quotes our discussion in *Luck* of the relevant factors and then continues:

The application of *Luck* has been refined and clarified in numerous subsequent decisions of the court which rendered it, notably in [*Gordon*].... Judge, now Chief Justice, Burger suggested in *Gordon* various factors to be considered ...: [list of *Gordon* factors]. It will be noted that [Rule 609(b)] imposes a specific time limit and that [Rule 609(c)] deals with aspects of rehabilitation; these provisions should be construed only as imposing outer limits upon the judge's determination *and not as restricting his decision within them.*

Proposed Fed.R.Evid. 609(a) advisory committee note, 51 F.R.D. 315, 393 (rev. draft 1971) (emphasis added).

As noted earlier, this discretionary approach was adopted in modified form by the House subcommittee that considered the Rules of Evidence, rejected by the House Judiciary Committee in favor of excluding all prior felonies, and rejected again after debate on the House floor. The Senate Judiciary Committee excluded all prior felony convictions for the defendant, but gave the trial judge discretion to balance probativeness against prejudice for other witnesses. The full Senate, however, made all felonies automatically admissible. Finally, the Conference Committee crafted the current compromise.[59]

Nothing in this lengthy history supports either Lipscomb's contention that the district court must usually inquire into the facts and circumstances underlying a prior conviction or the government's contention that the district court cannot so inquire.

---

**57.** In a footnote in *Gordon,* 383 F.2d at 940 n. 8, we discussed the relevance of the defendant's plea to the prior crime. We stated that if he had pled not guilty and testified in his own defense, "the jury's verdict ... is in a sense a *de facto* finding that the accused did not tell the truth when sworn to do so." We then cautioned in dictum that "[e]xploration of this area risks a diversion which may well be time consuming; hence use of this inquiry should be limited." This remark cannot be fairly read, however, to suggest that we thought it *per se* improper for the district court to inquire into this area; otherwise, our discussion of the relevance of the plea to the defendant's credibility would have been pointless.

**58.** *See* note 41 *supra* and accompanying text.

**59.** *See* notes 42–49 *supra* and accompanying text.

Thus, Representative Hungate, the House floor manager for the Rules of Evidence, explained the discretionary approach in simple terms: "We give discretion to the judge. . . ." 120 Cong.Rec. 2378 (1974). Similarly, Senator Burdick endorsed "the 'Luck Rule'" under which admissibility was left "to the sound discretion of the trial judge." *Id.* at 37,079.[60]

Some remarks do suggest, however, Congress' implicit understanding that the court can inquire into the background facts and circumstances if it wants to. Thus, Representative Brasco thought that the defendant should be able to show that a prosecution witness "made a sweetheart deal with the prosecution" in return for testifying. 120 Cong.Rec. 2378 (1974). Representative Smith, the principal House proponent of the discretionary approach, replied that this was "an exact case under which the compromise I offer would apply," *id.* at 2379, thus implicitly assuming that evidence of a witness' plea bargain is properly part of the balancing analysis. Similarly, Senator Biden believed that one underlying fact, whether the defendant had pled guilty, was relevant; a guilty plea "in a way is almost speaking for their credibility, having acknowledged they did it." *Id.* at 37,082. Also, an important part of the Conference Committee compromise was placing the burden on the government to show that the probativeness of a prior conviction outweighs prejudice to the defendant. It is implausible that the Committee would at the same time severely restrict the district court's ability to enforce that burden by precluding the court from asking the government for information beyond the name and date of the prior conviction.

### 2. *Rule 609(b)*

The legislative history also refutes any implication that because Rule 609(b) refers

to "specific facts and circumstances" and Rule 609(a)(1) does not, judges should not look at specific facts and circumstances under Rule 609(a)(1). Rule 609(b), as proposed by the Advisory Committee and adopted with minor changes by the House, made convictions more than 10 years old automatically inadmissible.[61] The Senate Judiciary Committee, however, added the "specific facts and circumstances" language to permit the trial judge to admit a dated conviction in "exceptional circumstances." S.Rep. at 15, 1974 U.S.Code Cong. & Ad.News at 7061–62. Thus, the discretionary approach of Rule 609(a)(1) was already well-developed before "specific facts and circumstances" entered Rule 609(b).

Moreover, the Senate did not debate Rule 609(b). Thus, nothing suggests that the full Senate, by accepting this change in the Rule, meant to alter the understanding that the trial judge could inquire into all relevant facts under Rule 609(a)(1). Indeed, the opposite inference seems more plausible: The Senate assumed that the trial judge could look at specific facts and circumstances in all cases, and chose to require the judge to do so in one class of cases.

### C. *Policy Considerations*

The government argues that even if the district court *can* look into the facts and circumstances underlying a prior conviction, we should discourage the court from doing so because the inquiry would be burdensome and time consuming and "is likely to yield nothing more than the fact, for example, that a larceny was a typical larceny."[62] A sufficient response is that Congress did not discourage such inquiry. But we are also unconvinced as a policy matter that we ought to discourage the district court from inquiring into the underlying facts.

First, the facts of this case contradict the government's assertion that the additional

---

**60.** The relevant committee reports merely parrot the language of the Rule. *See* S.Rep. at 14, 1974 U.S.Code Cong. & Ad.News at 7061; Conf.Rep. at 9, 1974 U.S.Code Cong. & Ad. News at 7102–03.

**61.** The Advisory Committee had made a prior conviction inadmissible if more than 10 years had elapsed since the *most recent* conviction.

Proposed Fed.R.Evid. 609(b), 56 F.R.D. 183, 269–70 (final draft 1973). The House formula required a separate evaluation of the recency of each conviction. *See* H.R.Rep. at 11–12, 1974 U.S.Code Cong. & Ad.News at 7085.

**62.** Supplemental Brief for Appellee at 31.

information will generally be of little help to the district court in assessing probative value. Smith's and Little's robberies seem fairly typical robberies. However, the extra information requested by the trial court and belatedly furnished by the government shows that both pled not guilty and were convicted after trial.[63] The record does not indicate whether either Smith or Little testified in his own defense, but if the government had shown that to be so, "the jury's verdict ... is in a sense a *de facto* finding that the accused did not tell the truth when sworn to do so." *Gordon*, 383 F.2d at 940 n. 8.

Moreover, the extra information on Lipscomb—in particular, his more recent burglary conviction—shows that he has not been rehabilitated since his robbery conviction, and therefore enhances the probativeness of the robbery conviction. And Green, although convicted only for accessory after the fact to manslaughter, had in fact been part of a group, another member of which had robbed and stabbed an 18-year-old boy; the group members then fled to Green's home.

The reported cases supply numerous other examples of the relevance of background

information. In some cases, the specific facts will make a conviction automatically admissible under Rule 609(a)(2).[64] In others, one specific fact—the date of release from confinement—will determine whether the district court rules on admissibility under Rule 609(a)(1) or under the much stricter standards of Rule 609(b).[65] In yet others, specific facts will simply prove relevant to the Rule 609(a)(1) balancing. The cases suggest the broad range of potentially relevant information. *See, e.g., Jackson,* 627 F.2d at 1210 n. 28 (manslaughter conviction; defendant had shot his wife and "the man who was with his wife at the time"); *United States v. Rosales,* 680 F.2d 1304, 1307 (10th Cir.1981) (defense witnesses were serving substantial prison terms, hence would have "some motivation to testify falsely in a dispute with prison guards"); *United States v. Jones,* 647 F.2d 696, 700 (6th Cir.) (prior crime was committed when defendant was only 20 years old), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *United States v. Hayes,* 553 F.2d 824, 828 (2d Cir.) (defendant had been convicted after testifying in own defense), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977).[66]

Nor do we consider the burden on the government or possible delay of the trial to

**63.** *See* text accompanying note 20 *supra.*

**64.** *See* note 56 *supra* and accompanying text. The government, unsurprisingly, wants to retain the option of introducing specific facts to bring a prior conviction under Rule 609(a)(2). *See* Supplemental Brief for Appellee at 8 n. 9.

**65.** *See, e.g., United States v. Portillo,* 633 F.2d 1313, 1323 & n. 6 (9th Cir.1980) (remanding for findings on specific facts and circumstances under Rule 609(b), but noting that the record showed only the date of conviction, not the date of release from prison), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981), *on appeal after remand,* 699 F.2d 461, 463 (9th Cir.1982) (conviction admissible under Rule 609(a)(1) because less than 10 years had elapsed since the defendant's release from prison); *United States v. Ball,* 547 F.Supp. 929, 933 (E.D.Tenn.1981) (government seeks to introduce conviction under Rule 609(b), district court "notices judicially from its own records" that the defendant was released from prison less than 10 years ago and admits the conviction under Rule 609(a)(1)).

**66.** *See also United States v. Solomon,* 686 F.2d 863, 873 (11th Cir.1982) (proper for defendant to point out that coconspirator who testified for the government had struck a favorable plea bargain).

Some circuits allow one piece of background information—length of sentence—to be introduced at trial as relevant to a witness' credibility, despite possible prejudice to the defendant. *See United States v. Bogers,* 635 F.2d 749, 751 (8th Cir.1980); *United States v. Barnes,* 622 F.2d 107, 109 (5th Cir.1980) (per curiam); *United States v. Boyce,* 611 F.2d 530, 530 (4th Cir.1979) (per curiam); *United States v. Wolf,* 561 F.2d 1376, 1381 (10th Cir.1977); *United States v. Harding,* 525 F.2d 84, 89 (7th Cir. 1975). *But see United States v. Tumblin,* 551 F.2d 1001, 1004 (5th Cir.1977) (defendant must give answers only as to the name of the felony and the date of conviction). One circuit allows more extensive background information to be introduced. *See Bogers, supra,* 635 F.2d at 751 (currently incarcerated; shotgun involved in prior assault). *Cf. Harding, supra,* 525 F.2d at 89–90 (prosecutor could have brought out the fact that the police seized 80 pounds of mari-

be serious problems. First, the district court is fully capable of taking possible burden or delay into account in deciding how much information it needs.[67] Second, in many cases, the district court may be satisfied with readily available information—perhaps the witness' case jacket or presentence report, if available. Such information was sufficient to satisfy the district court in this case. The burden on the government to obtain this information is slight, and may well be outweighed by the possibility that—as for Lipscomb and Green—the extra information will strengthen the government's argument for admitting the convictions. Also, there need be no delay at all if the government makes a regular practice of obtaining this basic information before trial. We join the district court in urging the government to do so. See Tr. II, *supra* note 2, at 283–84 ("as a matter of practice in the U.S. Attorney's office . . ., you would be better served if you would come in with more detail about . . . the previous conviction . . . [*e.g.*], a copy of the indictment").

Third, extra information is most likely to be important for the defendant because prejudice is far greater when the defendant himself is impeached. But we find it hard to imagine a conscientious prosecutor not making a reasonable effort to obtain at least some details of the defendant's past

convictions before deciding whether to seek an indictment, which charges to bring, or what sort of a plea bargain to offer.[68] Finally, we are unwilling to tell the trial judge to decide without adequate information the important question of whether to admit a prior conviction, simply because the government finds it a nuisance to gather the information.

### D. *Summary*

■ In sum, we hold, based on the language of Rule 609, the legislative history, and sound policy, that the district court has discretion to determine when to inquire into the facts and circumstances underlying a prior conviction and how extensive an inquiry to conduct. We decline at this time to establish general guidelines for determining when inquiry beyond the name and date of a conviction is necessary, although our discussion below of the specific convictions at issue in this case may shed some light on the matter. We will review the district court's decision as part of our overall deferential review of whether a decision to admit or exclude evidence is an abuse of discretion.[69]

### IV. ADMISSIBILITY OF THE PRIOR CONVICTIONS

The remaining question is whether the district court abused its discretion by admit-

---

juana from defendant, but it was plain error to inquire further into the details of the prior crime).

**67.** The trial court's discretion in this regard is, we believe, adequate rebuttal to the government's concern that it may not know until shortly before trial who the defense witnesses will be. *See* Supplemental Brief for Appellee at 30.

**68.** Knowledge of the details of a past conviction may also prove helpful in impeaching specific testimony by the defendant. *See, e.g., United States v. Clemente,* 640 F.2d 1069, 1082 (2d Cir.), *cert. denied,* 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981) (defendant, a longshoremen's union official, denied receiving loans by reason of his union position, government then impeached him with a prior conviction for receiving such a loan from a waterfront businessman).

**69.** No circuit, to our knowledge, has expressly decided when a district court can or should

inquire into the facts and circumstances underlying a prior conviction. But all agree that the ultimate standard of review under Rule 609(a)(1) is whether the district court has abused its discretion. *See United States v. Mehrmanesh,* 689 F.2d 822, 834 (9th Cir.1982); *United States v. Foley,* 683 F.2d 273, 278 (8th Cir.1982); *United States v. Rosales,* 680 F.2d 1304, 1306 (10th Cir.1981); *United States v. Grandmont,* 680 F.2d 867, 872 (1st Cir.1982); *United States v. Jones,* 647 F.2d 696, 700 (6th Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *United States v. Fountain,* 642 F.2d 1083, 1092 (7th Cir.), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981); *United States v. Cunningham,* 638 F.2d 696, 698 (4th Cir.1981); *United States v. Cathey,* 591 F.2d 268, 274 n. 11 (5th Cir.1979); *United States v. Ortiz,* 553 F.2d 782, 784 (2d Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977).

ting into evidence the prior convictions of Lipscomb, Smith, Green, and Little. We conclude that all of the convictions were properly admitted.

### A. Lipscomb

#### 1. Reviewability when Defendant Does Not Testify

As an initial matter, we must determine whether Lipscomb has properly preserved his objection to the district court's ruling. Lipscomb did not formally establish on the record that he would have testified at the second trial if. the court had excluded his prior robbery conviction. The government therefore argues that Lipscomb waived any objection to use of the conviction to impeach his testimony.[70] We disagree.

■ We have previously assumed without explicitly stating that a defendant does not need to state that he would testify if his prior conviction were excluded in order to appeal a ruling that the conviction is admissible. Jackson, 627 F.2d at 1210; United States v. Fearwell, 595 F.2d 771, 779 (D.C. Cir.1978); Smith, 551 F.2d at 356. Most other circuits agree. See, e.g., United States v. Kiendra, 663 F.2d 349, 352 (1st Cir.1981) (explicit); United States v. Fountain, 642 F.2d 1083, 1087 & n. 3 (7th Cir.) (same), cert. denied, 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981).[71] The government, however, urges us to follow United States v. Cook, 608 F.2d 1175, 1186 (9th Cir.1979) (en banc), cert. denied, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), which holds that a defendant must "establish on the record that he will in fact take the stand and testify if his challenged prior convictions are excluded."[72] We find persuasive the reasoning in Kiendra and Fountain and hold that when a defendant requests an advance ruling on the admissibility of a prior conviction, and later decides not to testify, the ruling is reviewable on appeal.

First, when a defendant seeks an advance ruling on admission of a prior conviction, it is reasonable to presume that the ruling will be an important factor in his decision whether to testify. See Kiendra, 663 F.2d at 352.[73] Second, advance rulings on admissibility are preferable because "[c]ounsel need to know what the ruling will be on this important matter so that they can make appropriate tactical decisions." 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 609[05], at 609–82 (1981), quoted in Jackson, 627 F.2d at 1209. To limit review of advance rulings would undercut the value of such rulings. See Kiendra, 663 F.2d at 352–53. Third, and most important, the Cook rule will probably serve merely as a trap for unwary defendants or defense counsel. Under the Cook approach, a knowledgeable defendant has a strong incentive to state before trial his intent to testify if the prior conviction is excluded. The defendant incurs no risk by doing so, because even if the court excludes the conviction, he can later decide not to testify without penalty. See Fountain, 642 F.2d at 1087 n. 3 (requiring defendants to disclose their in-

**70.** Brief for Appellee at 10–11.

**71.** See also United States v. Provenzano, 620 F.2d 985, 1002 n. 22 (3d Cir.) (explicit, no reasons given), cert. denied, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); United States v. Whitehead, 618 F.2d 523, 528 (4th Cir.1980) (Rule 608) (same); United States v. Hitsman, 604 F.2d 443, 447 (5th Cir.1979) (same); United States v. Williams, 587 F.2d 1 (6th Cir.1978) (per curiam) (implicit); United States v. Hayes, 553 F.2d 824, 826 (2d Cir.) (implicit), cert. denied, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977).

**72.** Accord United States v. Halbert, 668 F.2d 489, 494 (10th Cir.), cert. denied, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982); cf. United States v. Burkhead, 646 F.2d 1283, 1286 (8th Cir.) (per curiam) (not establishing a general rule, but noting that the defendant had stated that he would have testified if his prior conviction had been excluded), cert. denied, 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981).

**73.** We need not decide here whether the government can rebut this presumption by showing that the defendant would not have testified in any event. See Kiendra, 663 F.2d at 352 (If the government has "special reason to question a particular defendant's willingness to testify," it should so advise the district court, which may take this consideration into account in deciding whether to give an advance ruling on admissibility).

tent to testify "may amount to nothing more than a *pro forma* requirement which can only penalize ... unsophisticated defendants").

### 2. *Admissibility of* Alford *Plea*

■■ Lipscomb argues that he was never "convicted" of robbery within the meaning of Rule 609 because he pled nolo contendere while maintaining his innocence pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).[74] We reject this argument.

First, Lipscomb did not plead nolo; rather, like the defendant in *Alford,* he pled *guilty* while maintaining his innocence. Moreover, even if an *Alford* plea is somehow analogous to a nolo plea, the legislative history makes it clear that a nolo plea results in a "conviction." An early Advisory Committee draft of Rule 609 permitted the district court to admit "evidence that [a witness] has been convicted of a crime, except on a plea of *nolo contendere.*"[75] The exception for nolo pleas was deleted from the Advisory Committee's final draft and did not reappear. We must presume that Congress knew about and approved the deletion.

Second, we concluded in part III that the district court has discretion whether or not to inquire into background facts and circumstances such as the exact nature of a plea. It is implausible that Congress intended to make determinative a fact that the court may never learn about. Third, we

see no policy reason why the government can impeach a defendant who does not admit guilt, goes to trial, and is convicted, but cannot impeach a defendant who does not admit guilt but concedes that he will be convicted if he goes to trial and therefore makes an *Alford* plea.

We hold therefore that an *Alford* plea, like a nolo plea, does not preclude subsequent use of a conviction under Rule 609. *Accord United States v. Williams,* 642 F.2d 136 (5th Cir.1981) (nolo plea).

### 3. *The Pre-Trial Balancing*

The district court explicitly ruled that the probativeness of Lipscomb's prior robbery conviction outweighed the prejudice to him. It also partially complied with our request in *Smith,* 551 F.2d at 357 n. 17, and *Crawford,* 613 F.2d at 1050, for "some indication of the reasons for the finding," explaining that credibility was important to Lipscomb's defense and that someone "desperate enough to rob someone" is also "desperate enough to lie on the witness stand."[76]

■■ A fuller explanation of the district court's reasoning, including some discussion of prejudicial effect, would have been desirable. Nevertheless, we hold that its decision to admit Lipscomb's prior conviction was not an abuse of discretion. *See Jackson,* 627 F.2d at 1208–09 ("explicit finding of admissibility ... [is not] an absolute requirement the nonperformance of which mandates reversal").[77] Robbery is general-

---

**74.** Appellant's Brief at 23–24.

**75.** Proposed Fed.R.Evid. 609(a), 51 F.R.D. 315, 391 (rev. draft 1971).

**76.** *See* text accompanying notes 12–14 *supra.*

**77.** Our approach is consistent with the majority, although not the universal view in the other circuits that an explanation of the trial judge's reasoning is important but may not always be essential. *See Government of the Virgin Islands v. Bedford,* 671 F.2d 758, 761 n. 3 (3d Cir.1982) (Rule 609(a)(1) balancing "need not necessarily be explicit"); *United States v. Fountain,* 642 F.2d 1083, 1090 (7th Cir.) (urging judges "to *explicitly* articulate their balancing process on the record" but upholding trial court's decision to admit a prior conviction

without stating its reasons) (emphasis in original), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981); *United States v. Bogers,* 635 F.2d 749, 750 (8th Cir.1980); *United States v. Cook,* 608 F.2d 1175, 1187 (9th Cir.1979) (en banc), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Hayes,* 553 F.2d 824, 828 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977). *Compare United States v. Grandmont,* 680 F.2d 867, 873 (1st Cir.1982) (Rule 609(a)(1) does not "require" on-the-record balancing) *with United States v. Oakes,* 565 F.2d 170, 173 n. 12) (1st Cir.1977) (statement of reasons is "most helpful"; *and compare United States v. Rosales,* 680 F.2d 1304, 1306 (10th Cir.1981) (explanation not a "requirement") *with United States v. Seamster,* 568 F.2d 188, 191 n. 3 (10th Cir.1978) (explanation preferred). *See general-*

ly less probative than crimes that involve deception or stealth. But it does involve theft and is a serious crime that shows conscious disregard for the rights of others. Such conduct reflects more strongly on credibility than, say, crimes of impulse, or simple narcotics or weapons possession.[78] The age of the conviction (eight years ago) and Lipscomb's age when it was committed (16) reduce the probativeness of the conviction. On the other hand, credibility was central to the trial, and prejudice was not especially great because the previous crime was not similar to the present one. *Cf. Gordon,* 383 F.2d at 940 ("convictions which are for the same crime should be admitted sparingly").

### 4. *Post-Trial Evidence*

Any possible doubt on the propriety of admitting Lipscomb's prior robbery conviction is eliminated by the underlying facts that were submitted to the district court after the close of trial. This additional information shows that Lipscomb, although convicted eight years ago, had been released from prison only a year-and-a-half ago, and was a repeat offender with a more recent burglary conviction which the government had not proffered to impeach his credibility.[79] This subsequent conviction enhances the probativeness of Lipscomb's earlier robbery conviction because it shows that the robbery was not merely an isolated criminal episode from which Lipscomb has since been rehabilitated. *Cf. Gordon,* 383

F.2d at 940 (subsequent "legally blameless life" affects probativeness of prior conviction).

■ Lipscomb objects to use of this additional evidence because (1) late submission of evidence should be discouraged and (2) defense counsel could have used the evidence to rehabilitate him.[80] The first point is well-taken, and in the future, we expect the government to respond promptly to the district court's request for background facts and circumstances. In this case, however, we are unwilling to punish the government for its good faith belief that it did not have to submit such information. Moreover, even if the district court had misapplied Rule 609(a)(1) at trial, we would not immediately order a new trial but would instead remand to the district court to reconsider whether the prior conviction should have been admitted. *See, e.g., Crawford,* 613 F.2d at 1053; *Smith,* 551 F.2d at 366 (both following this approach). The district court would then almost certainly reaffirm its ruling, based on all the evidence, that the convictions were properly admitted. We decline to engage in such a pointless remand.

■ The second point is specious. Defense counsel could have readily obtained the information himself by asking his client a few questions. Moreover, Lipscomb does not explain, and we cannot see, how defense counsel could have used information on Lip-

---

*ly* Comment, *Impeachment by Prior Conviction: Adjusting to Federal Rule of Evidence 609,* 64 Cornell L.Rev. 416, 428–31 (1979) (policy reasons support this approach).

One circuit may require an explanation, *compare United States v. Preston,* 608 F.2d 626, 639–40 (5th Cir.1979) (remanding for on-the-record balancing), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980) *with United States v. Wiggins,* 566 F.2d 944, 946 (5th Cir.) (per curiam) (not requiring explicit reasons), *cert. denied,* 436 U.S. 950, 98 S.Ct. 2859, 56 L.Ed.2d 793 (1978), while two circuits consider an explanation to be unimportant. *United States v. Cunningham,* 638 F.2d 696, 698 n. 2 (4th Cir.1981); *United States v. Thompson,* 612 F.2d 233, 234 (6th Cir.1979).

78. Other circuits have approved admission of prior robbery convictions based on similar rationales. *See United States v. Grandmont,* 680 F.2d 867, 872 n. 3 (1st Cir.1982) (robbery, as a theft offense "reflect[s] adversely upon credibility"); *United States v. Halbert,* 668 F.2d 489, 495 (10th Cir.) ("It is improbable that one who undertakes to rob a bank with a gun will prove to be a person of high character who is devoted to truth."), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982). *But see United States v. Lipps,* 659 F.2d 960, 962 (9th Cir.1981) (error to admit prior robbery conviction where defendant's credibility was not in issue).

79. *See* text accompanying note 19 *supra.*

80. Appellant's Brief at 22, 26.

scomb's extensive criminal record to reha-
bilitate him.[81]

## B. *Little*

 We also find no abuse of discretion
in the district court's decision to permit
Little to be impeached by a five-year-old
armed robbery conviction. Little's convic-
tion, like Lipscomb's robbery conviction, in-
volves theft and indicates a conscious disre-
gard for the rights of others. In addition,
Little was an eyewitness to the arrest;
thus, his credibility was important. More-
over, there was presumably less prejudice to
Lipscomb from admission of Little's convic-
tion than from the admission of Lipscomb's
own conviction.

## C. *Smith*

 Smith's one-year-old conviction for
armed robbery was also properly admitted
into evidence. As to probativeness, the con-
viction was recent, involved theft, and was
for a serious crime. Also, Smith's credibili-
ty was important because he corroborated
Lipscomb's story that Smith had borrowed
Lipscomb's car earlier in the week and that
on the day of the arrest, Lipscomb had
driven Smith to Smith's mother's house,
dropped off his girlfriend at her house, and
was returning to pick up Smith to take him
home when he was arrested. Moreover,
prejudice to Lipscomb due to possible guilt
by association does not seem especially se-
vere.

## D. *Green*

For Green, as for Smith and Little, credi-
bility was important (Green was an eyewit-
ness to the arrest) and prejudice to the
defendant was relatively low. Neverthe-
less, the district court's decision to admit
Green's five-year-old conviction for accesso-
ry after the fact to manslaughter is trou-
bling for two reasons. First, one cannot
determine much about the degree of proba-
tiveness of a conviction for accessory after

the fact to manslaughter from the name of
the crime. Such a conviction could mean
merely that an otherwise law-abiding per-
son had sheltered a close friend or family
member and failed to seek out the police to
inform them that the person had been in-
volved in a hit-and-run accident or a fight
in a bar. Such conduct might not indicate
any propensity to lie on the witness stand.
On the other hand, the accessory after the
fact conviction could be based on actively
lying to the police to misdirect an investiga-
tion—conduct that is closely related to cred-
ibility. Second, the record contains only the
court's bare conclusion that probativeness
outweighed prejudice to the defendant,
with no indication of its reasons.[82]

 It would be a close question wheth-
er the district court abused its discretion by
admitting Green's prior conviction without
explaining its reasons and without any in-
quiry into the background facts and circum-
stances. *Compare United States v. Oakes*,
565 F.2d 170, 173 (1st Cir.1977) (no abuse of
discretion to admit prior manslaughter con-
viction where "credibility was crucial to the
case") *with United States v. Gross*, 603 F.2d
757, 758 (9th Cir.1979) (per curiam) (abuse
of discretion to admit prior narcotics convic-
tions without explanation; government had
also "offered no theory" why the probative
value of the convictions outweighed their
prejudicial effect). Fortunately, we do not
need to resolve that question here. If we
concluded that the district court erred, we
would normally remand to the court to re-
consider, in light of all the evidence, wheth-
er the conviction was properly admitted.
Here, the district court has already made
that determination in ruling on Lipscomb's
motion for a new trial. The additional
post-trial evidence shows that Green had
been part of a group, another member of
which had robbed and stabbed an 18-year-
old boy; the group members then fled to

---

**81.** Lipscomb makes an analogous objection to
use of post-trial evidence to justify admitting
the convictions of defense witnesses Smith,
Green, and Little. This objection suffers from

the same defects as the objection concerning
Lipscomb himself.

**82.** *See* note 17 *supra* and accompanying text.

Green's home.[83] Given this evidence of Green's participation in the crime, the court did not abuse its discretion in concluding that the evidence was properly admitted.

We are mindful that the prejudicial effect of impeachment of several defense witnesses by prior convictions may be enhanced because the jury may presume guilt by association from the fact that the defendant associates frequently with convicted felons. However, even considering the cumulative effect of the impeachment of Lipscomb, Little, Smith, and Green, we find no abuse of discretion.

## V. CONCLUSION

Rule 609(a)(1) of the Federal Rules of Evidence embodies a congressional belief that all felony convictions less than 10 years old have at least some probative value on the issue of credibility. The trial court has discretion to determine, based on the circumstances of each case, whether the probative value of admitting a prior conviction outweighs its prejudicial effect to the defendant, and also has discretion to determine how much information it needs to perform this balancing. In this case, we find that the court did not abuse its discretion in admitting the prior convictions of the defendant and of three defense witnesses. The conviction is *affirmed.*

MacKINNON, Circuit Judge (concurring specially).

I concur in Part V of the court's opinion and in many of the statements elsewhere, but because of my disagreement with some of its underlying rationale that might unduly complicate the application of the Rule, I set forth some of my comments thereon.

## I

### THE PLAIN MEANING OF THE RULE

The court's opinion deals extensively with legislative history and appears to have considerable difficulty interpreting Rule 609(a).

(Op. at 1056–1059). However, by resorting to the plain meaning of the words the problem of interpretation becomes considerably less difficult. The court's difficulty in interpretation stems from an apparent reluctance to accept fully the fact that the Rule recognizes the relevance of convictions for *all* capital crimes and felonies on the issue of the credibility of witnesses. In the last analysis, Part V of the court's opinion reaches this recognition but the reasoning and rationale expressed throughout the opinion may lead to considerable difficulty for the court and counsel in performing the required balancing. While the opinion for the court recognizes that major crimes have "some" probative value on the issue of credibility, the body of the opinion contains a number of statements that tend to playdown the probative value of capital crimes and felonies.

The Rule plainly provides that all felonies and misdemeanors[1] involving dishonesty and false statement are automatically admitted without balancing. Example: The felony of perjury, false statement to the government, 18 U.S.C. § 1001, *et seq.,* need not be balanced. In my view, other convictions for timely capital offenses and felonies are *all* made admissible if the probative effect of the defect in character of the witness, as represented by the elements of the crime for which he was convicted, outweighs the prejudicial effect to the defendant. In this connection, the Advisory Committee's Notes to the Rules of Evidence, as submitted by the Supreme Court to the Congress on Rule 609, recognize that:

> The weight of traditional authority has been to allow use of *felonies generally without regard to the nature of the particular offense* and of crimen falsi without regard to the grade of the offense.

House Document No. 93–46, 93d Congress, 1st Session, February 5, 1973 (emphasis added). This was the approved view of its Rule as submitted to Congress by the Supreme Court. And the rule that *finally* emerged from Congress is substantially the

---

**83.** *See* text accompanying note 20 *supra.*

**1.** On misdemeanors see *United States v. Millings,* 535 F.2d 121 (D.C.Cir.1976).

rule as presented by the Supreme Court, with only balancing added. See discussion, *infra*. So I would interpret the Rule to "allow [the balancing] of *felonies generally* . . . ." *Id.* (emphasis added).

Because of the plain language of the Rule and the Advisory Committee's Notes, I am forced to disagree with the statement in the court's opinion that "the language of the Rule also *weakly suggests* that all felony convictions less than ten years old have at least some probative value." (Op. at 1056) (emphasis added). My disagreement is with the characterization of the Rule as a *weak suggestion*. Rule 609 plainly states that "evidence that he has been convicted of a crime *shall be admitted* . . . but only if the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the defendant . . . ." This is a plain direct statement by Congress that all capital crimes and felonies "*shall be admitted*" if the balancing test is met. I see no weakness in that expression of congressional intent—rather, the statement in the court's opinion is an unsupported attempt to weaken the express direction of Congress.

II

LEGISLATIVE HISTORY

After years of consideration by the Advisory Committee, the Chief Justice of the United States, by direction of the Supreme Court, transmitted to the Congress the Rules of Evidence of the United States Courts and Magistrates which had been adopted by the Supreme Court pursuant to law.

Despite the lengthy legislative history that is recounted in the court's opinion, the end result in Congress was that the language of Rule 609(a), with which we are here primarily concerned, was *not* materially altered from that presented by the Supreme Court. To illustrate this, the Rule as presented, and as finally adopted, is set forth below. The only *two words* that were deleted from the Supreme Court draft are enclosed in brackets [ ], and new matter added by Congress is set forth in italics.

Rule 609. Impeachment by Evidence of Conviction of Crime

(a) General rule.—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime [is admissible] *shall be admitted* if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, *and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant,* or (2) involved dishonesty or false statement, regardless of the punishment.

Before Congress amended Rule 609(a) the balancing provided in Rule 403[2] could always be invoked by a defendant's objection to the introduction of a conviction.[3] As transmitted by the Chief Justice Rule 609 provided that prior convictions were "admissible," whereas amended Rule 609(a) states such evidence "*shall be admitted.*" Rule 609(a) as enacted provides when admission is *mandatory* and Rule 403 continues to provide when exclusion is *discretionary*. Thus, given the intangible nature of the elements of the crimes to be weighed, the nuances inherent in the inverse standards to be applied, the mandatory direction of Rule 609(a)[4] and the highly dis-

---

2. Rule 403 was not altered from the Supreme Court draft. It provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

waste of time, or needless presentation of cumulative evidence.

3. In non-federal offenses D.C.Code § 14–305 specifically provided for the admission of felony convictions. (84 Stat. 550–51).

4. The initial wording of Rule 609(a) only recognized the relevance of convictions, whereas,

cretionary standard of Rule 403, the two rules (as proposed by the Supreme Court and as enacted) in practical application are essentially functional equivalents. Congress thus ended up *requiring* the admission of prior convictions by a standard that did not vary materially from the combination of Rules 609 and 403 as transmitted by the Chief Justice. And since the only amendments to the Rule that survived were those made by the Conference Committee the rest of the extensive legislative history is irrelevant. As to Rule 609(a) the Advisory Committee's Notes in most respects are more relevant. See extract therefrom quoted at p. 1051, *supra*. The Conference Committee Report as quoted at p. 1077, *infra*, is even stronger.

The persuasive argument for admitting all "felonies generally," and not just crimes with veracity related elements, was made by Senator McClellan:

> [A] person who has committed a serious crime—a felony—will just as readily lie under oath as someone who has committed a misdemeanor involving lying. Would a convicted rapist, cold-blooded murderer or armed robber really hesitate to lie under oath any more than a person who has previously [only] lied? Would a convicted murderer or robber be more truthful than such a person?[5]

120 Cong.Rec. 37076–77. A negative answer is indicated by the mere posing of the question. This was the common sense logic from which the Advisory Committee and the Supreme Court proceeded and that ultimately prevailed in Congress.

The court's opinion also states that the legislative history is "not wholly satisfying" because "Congress *never focused* on the narrow question whether all felonies have at least some probative value on the issue of credibility." (Op. at 1061) (emphasis added). This statement is an implicit admission that Congress *never restricted* the general language of the Rule, i.e., all convictions of crimes "punishable by death or imprisonment in excess of one year," *"shall be admitted"* if they survive balancing. By including capital offenses and felonies *without limitation, none of which include any element of "dishonesty or false statement"* because of the operation of (a)(2), Congress indicated by the scheme of the Rule that veracity related elements were *not* required for such crimes to be balanced. Thus, the probative value to be balanced flows from the elements of the crime and the magnitude of the defect of individual character, the disrespect for law, that flows from the conviction of *any* such major crime. The scheme of the Rule therefore implicitly assumes that convictions for *all* such capital offenses and felonies bear on credibility.

The court's opinion, under the guise of deferring to a "compromise" which occurred in the Conference Committee, fails to fully recognize the plain meaning of the Rule as unanimously adopted by the Conference Committee and enacted by Congress. As shown above, Congress did a complete circle returning to its starting point; the "compromise" was nothing more than a reversion to the Rule as transmitted from the Supreme Court, with a minor modification of Rule 403 balancing added. Moreover, there is nothing in the so-called "compromise" that constitutes a valid basis for *altering* the ordinary meaning of the plain words of the Rule.[6] Hence, the dis-

---

while the amended Rule did also, it additionally *directed* admission of evidence of convictions subject to balancing. This direction is one indication that Congress strongly favored the admission of prior convictions.

**5.** This defect of human character was argued last week to the jury in the District Court trial in *United States v. Wilson,* D.C.D.C. No. 80–200, conspiracy to murder. Defense counsel challenged the testimony of the government's principal witness who had admitted he was hired and paid to commit a murder. Defense

counsel is quoted as having argued: "He'd kill on orders. I suggest to you, *if he'd kill, he'd lie." Washington Post,* March 5, 1983, page A5. After the trial defense counsel was quoted as admitting that the government had a "tryable case," but the defendant was acquitted. *Id.*

**6.** The Conference Committee adopted the Senate Amendment to include capital crimes and felonies and added balancing. This would lead to a preference for the Senate intent as to the nature of the admissible crimes, capital of-

cussion of legislative history while interesting is largely inapplicable.

## III

THE APPLICATION OF THE RULE—BALANCING

As to the procedure to be followed in balancing, it is my view that the court can request any information it considers it needs to exercise its discretion. While ordinarily the name of the crime, the date of the conviction, and the date the witness was released from confinement would be sufficient to perform the necessary balancing, the court has *wide* discretion to request any information that it considers would be helpful.

Therefore, recognizing the breadth of the court's discretion, I would not fetter that discretion by specifying or inferring that the trial judge should consider any particular factors because to do so unnecessarily narrows his discretion. Trial judges should not be placed in straight jackets in the exercise of their discretionary authority. It must also be remembered that in many trials no transcript is prepared and that review by a subsequent court of the proof at trial of a prior conviction could be a very time consuming adventure. In the majority of cases the elements of the statutory offense indicated by the indictment and the jury verdict and the relevant dates, together with such representations as defense counsel might make, should normally be sufficient for the court to perform all the balancing that is fairly required.

The balancing process to be carried out by the judge must of necessity have some practical limitations. In *United States v. Boyer,* 150 F.2d 595, 596 (D.C.Cir.1945), Judge Edgerton wrote with respect to the evidence needed by a jury in considering the effect of a prior conviction on a witness' credibility.

It is generally agreed that in order to save time and avoid confusion of issues, inquiry into a previous crime must be stopped before its logical possibilities are exhausted; the witness cannot call other witnesses to corroborate his story and the opposing party cannot call other witnesses to refute it. The disputed question is whether inquiry into a previous crime should stop (1) with proof of the conviction of the witness or (2) with any reasonably brief "protestations on his own behalf" which he may wish to make. The second alternative will seldom be materially more confusing or time-consuming than the first, if the trial judge duly exercises his "considerable discretion in admitting or rejecting evidence." [*Bracey v. United States,* 79 U.S.App.D.C. 23, 142 F.2d 85, 89]

Many of the same considerations that are applicable to the impeachment of witnesses before a jury also apply to a considerable extent to the procedure by which the judge will balance under the Rule. The considerations expressed by Judge Edgerton are as applicable today as when they were written when it was recognized that the trial judge had "considerable discretion in admitting or rejecting evidence." *Id.*

It can also be concluded from the plain language of the Rule that while there is no legal presumption that all capital offenses or felonies are automatically admissible the Rule states directly that timely convictions of such crimes *shall be admitted* subject to balancing.[7] This language operates to create an initial burden supporting admission that the party opposing admission must overcome or evidence of the conviction will be admitted. The strong inference in the Rule favoring the admission of convictions of such crimes is further supported by the Conference Committee Report:

Such evidence [of convictions of capital crimes and felonies] should *only* be excluded where it presents a danger of *improperly* influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior criminal record.

fenses and felonies. Notes of Conference Committee, House Report No. 93–1597.

7. In Rule 609(b) the initial burden is reversed since the Rule provides as an initial premise that convictions are *"not admissible"* unless the court balances in favor of admission.

Notes of Conference Committee, House Report No. 93–1597 (emphasis added).

Finally, I strongly object to the statement in the court's opinion that "the district court [should obtain] ... perhaps the witness' case jacket or presentence report ...." (Op. at 1068). With respect to defendants both of these items would raise serious due process considerations. Judges trying cases, whether in a bench trial or with a jury, should not have access to the extensive details of a defendant's prior criminal record unless absolutely necessary. Courts generally are not allowed to have that information until after a verdict has been rendered. Trial judges can be influenced in their rulings by prior knowledge of extensive criminal records. It is submitted that a defendant's rights are generally better protected when the evidence surrounding prior convictions that is presented to the court is limited to the bare essentials.

The D.C. statute, originally enacted in 1901 (31 Stat. 1357), which provided for the manner of proving a prior conviction, and which is still applicable to D.C. offenses, could well be sufficient in most cases under Rule 609:

> [T]o prove conviction of crime, it is not necessary to produce the whole record of the proceedings containing the conviction, but the certificate, under seal, of the clerk of the court wherein the proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient.

D.C.Code § 14–305(c) (1981).

## IV

### LIMITING INSTRUCTIONS

The statements by Judge Hand and Justice Jackson which are quoted in the opinion for the court are frequently referred to but seldom analyzed. The court's opinion follows that practice. (Op. at 1062). This leaves the inference that it is unfair to admit prior convictions of defendants. However, what is significant about those statements is that the judges did *not* advocate eliminating the practice of introducing such evidence followed by limiting instructions to juries directing them to confine their consideration of evidence of prior conviction to the witness' credibility and not to guilt. The reason that such judges did not advocate eliminating such rule is because the high purpose of a trial is that it constitutes a *search for truth* and *the rule of admissibility of prior convictions serves that purpose.* Judge Hand in *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.1932) expressed this opinion when he commented that "the Rule probably furthers, rather than impedes, the *search for truth* ... and this perhaps excuses the device which satisfies form while it violates substance." (Emphasis added).

Every court in this nation, except in Montana and Hawaii, admits prior convictions to some extent to impeach the credibility of witnesses, IIIA, J. Wigmore (Chadbourn), *Evidence,* § 987 (1970 and Supp.1982), and all presumably give routine limiting instructions. Thus, contrary to the desires of those who quote the statements in an effort to discourage admission of prior felony convictions, such efforts have not been successful; convicted felons are *not* generally permitted to stand pristine before a jury with the same credibility as that of a Mother Superior. Fairness is not a one-way street and in the search for truth it is a legitimate concern that one who testifies should not be allowed to appear as credible when his criminal record of major crimes suggests that he is not.

Moreover, such evidence is not as prejudicial as some think. Those who try criminal cases generally recognize that attacking a witness before a jury because of a prior conviction may be a two-edged sword:

> unless you can break down his *evidence;* you will not do that by hammering away at his *character....*
>
> There cannot be a greater mistake than to suppose that a man who is suffering punishment for a crime, and who comes into the box to give evidence, will not be believed because of his character. You will generally find that he is regarded with sympathy to begin with. The jury

will weigh his evidence scrupulously; and their attention will be naturally drawn towards the *probabilities* of his story. *If you cannot touch these, you will make little effect by constantly referring to his misdeeds. . . .*

IIIA, J. Wigmore (Chadbourn), *Evidence,* § 980 (1970) (quoting R. Harris, *Hints on Advocacy*) (emphasis added). Harris was referring to a convict testifying for a criminal defendant, but the same observation applies to a previously convicted felon testifying in his own behalf *if he has a reasonable defense on the facts.* If a defendant has a reasonable factual defense, he will find that juries are conscientious and he can prevail despite prior convictions of crimes. It is an everyday occurrence for juries to accept the testimony of convicted felons, accomplices and those guilty of major crimes, many of whom are compelled to testify under our immunity statutes or under agreements with prosecutors that resulted in lesser punishment.

Some citizens, lawyers, legislators and judges focus upon what they consider to be the question of fair play for the criminal from a purely technical viewpoint. They lose sight entirely of society's right to have major criminals convicted and of the necessity that witnesses, both for the prosecution *and* defendant, not be permitted to appear as credible when in fact they may not be. They also completely lose sight of the fact that our criminal law, when viewed as a whole, already affords the accused far more rights than do the laws of any other nation. In fact, there is widespread respectable opinion that our system of criminal justice is unfairly weighted in favor of the criminal in many respects. The present controversy, focusing entirely upon the admissibility of prior convictions of defendants who are witnesses, grew out of a myopic view and incomplete knowledge of English trial practices that, in some instances, restrict the admission of prior convictions of defendants. Yet, when an English criminal trial is viewed in its entirety it is far less favorable to defendants than criminal trials are in the United States.[8] Those who suggest the adoption of isolated "improvements" of criminal procedures from foreign jurisdictions should look to the *complete* criminal procedure to see to what extent "improvement"(?) is necessary or justified when the rights of society and defendants are considered.

**8.** While Great Britain might be more restrictive in the use of prior convictions to impeach a defendant in some cases, when a criminal trial in Britain is compared to one in America our procedures provide a trial that is much more favorable to the defendant. For example, a few comparisons: In criminal trials in England the judge in "summing up" may comment to the jury on the failure of the defendant to testify, *Rex v. Rhodes* (1898) 1 Q.B. 77; *Rex v. Voisin* (1918) 1 K.B. 531. The judge in a proper case may direct a jury to convict, *Rex v. Ferguson* (1970) 54 Cr.App.R. 410; and that they should not acquit, but should decide whether the defendant is guilty of murder or manslaughter, *Rex v. Larkin,* K.B. 174; 29 Cr.App.R. 18; *Rex v. Black* (1964) 48 Cr.App.R. 52. The bad character of the defendant may be admitted for the jury to consider the likelihood that a person with such character would commit the offense. Criminal Evidence Act 1898, s. 1(f)(i). The court can charge the jury *for* conviction and after a reasonable period of deliberation the jury is not required to be unanimous. Practice Direction issued by Lord Parker, C.J., 51 Cr. App.R. 454. Two hours may be considered as a reasonable period. Juries Act, 1974; Practice Direction (1970) 1 W.L.R. 916; 54 Cr.App.R.

373. After a certain time it is also possible to accept a "majority verdict," Lord Parker, C.J. (1967) 51 Cr.App.R. 454. The burden of proof is not guilt beyond a reasonable doubt (that phrase is outlawed) but *only* that the jury "feel sure of guilt," *Rex v. Rees* (1930) 21 Cr.App.R. 35; *Rex v. Summers* (1953) 36 Cr.App.R. 14; *Walters v. Queen* (1969) 2 A.C. 26, 30. If the attack by the defense involves imputations on the character of the prosecutor or the witnesses for the prosecution, then prior convictions of the defendant are admissible. Criminal Evidence Act 1898, s. 1(b)(ii). Whether the prosecutor will argue the case to the jury depends on the case. It depends on the extent that the accused has put in an affirmative defense. *Rex v. Bryant and Oxley* (1978) Crim.L.R. 307 C.A. In any event, the judge more or less performs that function in "summing up" the case when he has the wide authority, discussed above, to comment on the evidence and to charge for conviction in an appropriate case. These are just a few of the differences from our practice, but they are sufficient to illustrate that it is wrong to argue that we should adopt a procedure somewhat related to one isolated feature of British practice and ignore the context in which it exists and is used in England.

## CONCLUSION

The primary purpose of a criminal trial is to search for truth, and the jury's determination of a witness' credibility is one of its most essential duties. Rule 609 is directed to this task, and juries should not be denied critical evidence that bears on this determination by the failure, when balancing, to recognize the *full* probative force of convictions of capital crimes and felonies. In this respect I find the Rule on its face to be clearer and more forceful than the court's opinion is willing to recognize. No so-called "compromise" in the legislative history in any way restricts the probative force of *all* the major crimes which are to be considered in the balancing process under Rule 609(a)(1). Convictions of major crimes, even those that do not include veracity-related elements, represent a defect of character in the individual that bears strongly on his credibility as a witness. I would also point out that the Rule vests the trial judge with a *wide* discretion in weighing the probative value and prejudice of prior convictions. However, because of due process considerations and to avoid unnecessary trial delay, evidence of prior criminal activity of the defendant offered in the balancing process should be limited to the minimum the judge considers necessary.